**P. H. TRITT, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 70-C-38-A.**

United States District Court, W. D. Virginia, Abingdon Division.

Oct. 30, 1970.

Glen M. Williams, Jonesville, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Involved in this case is an attempt to secure social security disability benefits. The claimant was born on December 26, 1921 in Pennington Gap, Virginia, where he still resides. He is married and has a married son who lives away from home. His background is varied in that he attended two years of college, served in the Navy, owned and operated a hardware store, leased two trucks on a commission basis, owned and operated a farm, worked as a part-owner in a coal company, and worked as a part-time clerk in a Western Auto store.

In 1966 the claimant was forced to stay in the hospital for a week because of pneumonia. He tried to work again for the coal company, and for several months as a clerk in the Western Auto store. He has done no other substantial work since that time. He has been rated as disabled for the purpose of Veterans Administration benefits.

The claimant alleges that his disability dated from October 1967. He continues to meet the special earnings requirement through and beyond the date of this opinion. At the proceeding before the hearing examiner several witnesses testified in favor of the claimant. Henry Palmer, who had been associated with Mr. Tritt in the coal business, stated that the latter became unable to engage in the business and that the others bought him out. Mack Gibson had been a tenant farmer on the claimant's property and he testified that he had seen Mr. Tritt show extreme difficulty breathing while walking on the farm. Mrs. Tritt testified that her husband became exhausted when he performed minor repair jobs around the house.

A medical report dated March 23, 1968 from Dr. Kinser, the treating physician, made diagnoses of pulmonary fibrosis, pulmonary emphysema, and chronic bronchitis with diminished pulmonary function. He stated in the report, "It is obvious that this patient is getting to be a pulmonary cripple." In a March 6, 1968 letter to the Veterans Administration Dr. Kinser stated his opinion that the claimant was "totally and permanently disabled for any gainful employment." Dr. Kinser made a follow-up report on March 24, 1969 in which he stated, "This patient is not getting any better, and I do not think he could obtain gainful employment with his present condition." Dr. Daniel Gabriel, another treating physician and a general practitioner, in a letter dated June 20, 1968 also stated the opinion that the claimant was "permanently disabled for gainful employment due to his chest condition confirmed by x-ray as pulmonary fibrosis and emphysema."

The defendant has had the plaintiff examined at its own expense by Dr. Charles Kirkpatrick, an internist. He noted in his report that the claimant smoked a pack of cigarettes in spite of his condition but that he claimed it did not aggravate his troubles. His conclusion was that:

> Although the physical examination and x-ray findings are not strongly suggestive of emphysema, I nevertheless suspect there is mild to moderate emphysema, with an activity of class 11. Probably the pneumonia was a factor in aggravating the emphysema.

Dr. Kirkpatrick's diagnosis was based on his own examination and x-rays. It is not clear whether he also considered the pulmonary function studies conducted at the Appalachian Regional Hospital. The defendant also had the claimant subjected to arterial blood gas studies by Dr. Gilbert L. Hamilton which indicated results generally within normal limits.

Dr. Karl Heiser, a vocational expert and clinical psychologist, testified at the hearing. Based upon the claimant's employment and educational background and on the assumption that a class 11 impairment existed, he stated that in his opinion the claimant was still capable of performing as a farm manager (farms of over 400 acres), store operator, truck dispatcher, industrial guard, light welding worker, bottling machine operator, jobs at laundries and dry cleaning plants, greenhouse jobs, and jobs in hospitals such as supply room clerk.

There is no doubt that the claimant's condition is impaired. The only question is whether the impairment is so severe as to preclude the claimant from "any substantial gainful activity." 42 U.S.C. § 423(d) (1) (A). The evidence presents a close case for consideration, and obviously the claimant is physically in bad condition.

Two treating physicians who were familiar with the claimant's history stated that he was completely disabled in their opinion. On the other hand, an independent physician who made his own examination in addition to consulting x-rays and perhaps pulmonary function studies, classified the impairment as "mild to moderate emphysema, with an activity of class 11." If Dr. Kirkpatrick did not consider these pulmonary function studies, their meaning has not been interpreted by qualified medical personnel. Even if he did consider these studies, their general inconclusiveness lessens the weight which the results might seem to deserve on first impression.

> Some patients may have a great pulmonary insufficiency without any significant degree of disability while others may be greatly incapacitated even though arterial oxygen and carbon dioxide are within normal range.

9 Proof of Facts 648 (1961).

■ The court is of the opinion that when the existence of an impairment is admitted and the severity of the impairment is in question, the opinions of treating physicians are entitled to substantially greater weight than the impression of a doctor who sees the claimant only once. *Cf. Mefford v. Gardner,* 383 F.2d 748, 761 (6th Cir. 1967). In view of the conclusions of disability by the two treating physicians, the court is strongly inclined to find that the claimant has established the necessary impairment.

■ On the other hand the evidence that the claimant continues to smoke excessively (a package per day), contrary to doctor's orders, is troubling. The plaintiff has denied that the smoking affects his condition and there is no evidence to contradict this assertion. Since, however, his doctors have advised him to stop smoking, the court believes that the matter should be remanded to the Secretary for the purpose of taking evidence and making findings as to the effect of this smoking on the claimant's residual capacity for substantial gainful activity and its effect on his prospects for an improved condition. The court suggests to the claimant that he should do everything possible to follow his doc-

tors' advice and to ameliorate his condition as much as possible before turning to the government for disability benefits.

The court also directs the Secretary to determine whether Dr. Kirkpatrick considered the results of the pulmonary function studies in making his report. If Dr. Kirkpatrick did not consider these studies, the Secretary should have them evaluated by a physician who is to indicate what the results suggest and how reliable such tests are as evidence of disability. The court does not mean to indicate that this evidence would be determinative but believes that it should be considered with the other evidence presented, and the case considered anew by the Secretary.

It is the judgment of this court, then, that this case be remanded to the Secretary for further evidence and findings as provided in 42 U.S.C. § 405(g).

It is so ordered.

The clerk is directed to send a certified copy of this opinion and judgment to counsel of record.