Mary B. NANNY, Plaintiff,

v.

F. David MATHEWS, Secretary, Health,
Education and Welfare, Defendant.

Civ. A. No. 76–0182.

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 7, 1976.

Herbert T. Williams, III, Dinwiddie, Va., for plaintiff.

Robert W. Jaspen, Asst. U.S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Mary B. Nanny brings this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary in which it was held that plaintiff was not entitled to disability benefits upon an application filed May 16, 1975. The sole issue before the Court is whether the final decision of the Secretary is based upon substantial evidence. *See* 42 U.S.C. § 405(g). The defendant has moved for summary judgment, and the plaintiff has cross-moved for summary judgment. The matter is ripe for disposition.

The function of the Court is not to try this matter *de novo*, but to resolve conflicts in the evidence. The Court, however, is duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings, and that his decision is rational. *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976); *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975); *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The facts are not in dispute. They are, as set forth by the defendant, as follows:

The plaintiff in this case filed an application in May of 1975 claiming a disability from January 12, 1975, at age 54, due to a back impairment and leg difficulty as a result of the deteriorating lumbar disc and arthritis of the spine. At the hearing, she alleged she also had arthritis in her hands and fingers and a thyroid condition. When testifying before the Administrative Law Judge, plaintiff stated the pain in her back and right leg prevented her from standing for any length of time and interfered with her sleep.

Plaintiff was hospitalized in Johnston-Willis Hospital on January 12, 1975 until January 28, 1975 with a diagnosis of lumbar disc syndrome low back strain. Historical information revealed that plaintiff had an excision of a herniated nucleus pulposus and a spinal fusion in 1973. Her medications included thyroid medication, an anti-depressant, and fluid pills. While hospitalized, plaintiff underwent a lumbar myelogram which was interpreted by Dr. David D. Talley, a radiologist and internist, as indicating evidence of rather advanced spondylosis which caused bilateral and central narrowing of the Pantopaque column at the third lumbar interspace and to a lesser degree at the second lumbar interspace. Plaintiff's condition gradually improved and she was discharged to be followed as an outpatient. The hospital report was signed by Dr. R. D. Butterworth, an orthopedic surgeon.

In a letter to plaintiff's employer dated April 16, 1975, Dr. Butterworth indicated he had treated plaintiff on an intermittent basis since January, 1973 for pain in her back and leg. He stated that her condition had not improved in spite of all the treatment which included a spinal fusion, physical therapy and traction. In addition to her back and leg pain, plaintiff was a nervous person and was overweight. It was Dr. Butterworth's opinion that because of her painful weak lumbosacral spine, she would be unable to do her work as she described it, as working with her arms over her head and things of that kind caused her to have pain and to become nervous. In another letter to the employer dated April 18, 1975, Dr. Butterworth expressed the opinion that plaintiff was unable to follow any gainful occupation; therefore, she was totally dis-

abled from doing any type of work. In a letter to plaintiff's attorney dated October 10, 1975, Dr. Butterworth indicated that there had been no change in plaintiff's condition. He reiterated his opinion that she was unable to do the type of work she had previously done, and that she was unable to do work which required her to be on her feet 8 to 10 hours a day. In addition, he stated plaintiff had considerable arthritis throughout her body which naturally would worsen with time and age, and was very dubious that she could obtain any gainful employment.

In a report dated May 7, 1975, Dr. Fletcher J. Wright, Jr. of Brown and Williamson expressed the opinion that plaintiff was no longer able to perform any duties with the company and was, therefore, permanently and totally disabled because of her back problem.

Plaintiff in this case has a high school education and worked 19½ years as a cigarette catcher for Brown and Williamson Tobacco Company and for six years before that she worked on a production line for Titmus Optical Company. She was married in 1939 and had three children. Both plaintiff and her husband went to work at the tobacco company within a year after the birth of their youngest son who is now 20 years of age. Plaintiff alleged she began having back problems in 1973 and missed about one-half of the work days that year. Her back condition worsened and she had surgery. After her return to work in August, 1973, she did not miss much time. In 1974, she only had two days of sick leave during the entire year but in order to work she testified that she had to use pain pills, visit her doctor often, and frequently went to the first aid station at work where they used heat and back massage. In January 1975, she alleged her back impairment worsened and she was hospitalized and placed in traction. In May of 1975, she was retired on disability by her employer. She indicated she was able to do some light housework, but she tired easily and was unable to socialize much with neighbors as her back condition made it difficult to get about. In addition to her back problem, she alleged she had arthritis which bothered her fingers and hands, and thyroid trouble. Plaintiff testified that her back and leg problems caused her considerable pain which interfered with her ability to sit or stand for any extended period of time and caused her to have trouble sleeping. She stated she took nerve, thyroid, pain, and fluid pills. Plaintiff's husband testified at the hearing and corroborated her testimony regarding her condition and the restrictions it imposed upon her. A neighbor also testified, corroborating plaintiff's statements regarding the restrictions imposed on her, how it affected her ability to work about the house, how the other family members helped with the housework, and how she was unable to socialize with neighbors.

Dr. Andrew V. Beale, a vocational expert, appeared at the hearing and testified. Dr. Beale was asked what jobs, if any, plaintiff could do which existed in significant numbers in various areas of Virginia and in the national economy considering her age, education and prior experience, and assuming that plaintiff was limited to light activities which involved no prolonged walking or standing, and no heavy lifting or repeated bending. To this assumption, Dr. Beale indicated that plaintiff would have been capable of essentially sedentary jobs such as ticket cashier, remittance clerk, print machine operator, currency clerk, and bench processing and packaging jobs, among others. On the assumption that in addition to the above restrictions and as a result of her pain and her inability to sleep, plaintiff would be unable to work on a regular basis, Dr. Beale indicated she would not be able to perform substantial gainful work as most jobs require fairly regular attendance.

Plaintiff's earning record indicates that she will meet the special insured status requirements until September 30, 1979.

In order to qualify for disability benefits under Section 223 of the Social Security Act, 42 U.S.C. § 423, there must be present: (1) a medically determinable physical or mental impairment which can be expected to result in death, or which has

lasted, or can be expected to last, for a continuous period of not less than 12 months, 42 U.S.C. § 423(d)(1)(A), and (2) a factual determination that the impairment actually renders the plaintiff unable to engage in any gainful employment. *See Hicks v. Richardson*, No. 71–2196 (4th Cir. July 24, 1972); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964).

Section 223(d)(2)(A) of the Act further defines "disability" as follows:

"(A) [A]n individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

On the facts above, the Administrative Law Judge found that "the actual medical evidence in regard to limitations imposed on this claimant by her troubles simply fails to prove that she has any real severe or significant limitation" and that "it was the unequivocal opinion of a well-qualified vocational expert who is familiar with employment in various areas of Virginia, that there are indeed jobs in significant numbers which she could perform, which . . . are very light, sedentary, and require no lifting, bending, squatting and climbing."

From its review of the evidence, the Court is satisfied that the Secretary could find that the plaintiff could perform some light or sedentary activity. The question remains, however, whether plaintiff is capable of sustaining that activity through a working day.

The evidence from Dr. Butterworth, who has treated the plaintiff on an intermittent basis since 1973, was that in his opinion, plaintiff was totally disabled from doing any type of work. On the record it appears that the Administrative Law Judge discounted this evidence as mere advocacy for plaintiff's disability benefits. While the Judge is not bound by the doctors' opinions, "this court has emphasized that the opinion of a claimant's treating physician is entitled to great weight, for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974); *Vitek v. Finch*, 438 F.2d 1157, 1160 (4th Cir. 1971).

The plaintiff testified that the pain from her back and leg condition places severe limitations on her ability to function normally. Moreover, this pain results in an inability to sleep which causes her to tire easily during the day and to require frequent rest after performing even very light activity. There is no evidence to show that plaintiff was not truthful in her testimony nor can there be any doubt as to her motivation to work. She had worked with Brown and Williamson Tobacco Company for 19½ years prior to her disability and with Titmus Optical Company for six years prior to that. In 1973, she underwent a back operation and missed a great deal of work but worked full time with great difficulty and at much inconvenience before her back and leg problems forced her to discontinue work in January of 1975. A person with such a strong work record should be afforded substantial credibility as a witness to her own work capabilities. *Vitek v. Finch, supra* at 1159. Moreover, plaintiff's objective testimony was corroborated by the testimony of her husband and a neighbor.

It appears that the subjective evidence of pain and inability to sustain even very light activity was, in the Court's view, entirely discounted by the Administrative Law Judge.

■ However, subjective evidence of disability is entitled to great weight especially when it is uncontradicted in the record. *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976); *Combs v. Weinberger*, 501 F.2d 1361 (4th Cir. 1974).

The plaintiff has established a *prima facie* case of disability and there is no conflicting evidence to sustain the Secretary's conclusion that she is able to perform light sedentary jobs. Assuming an inability to engage in sustained activity, a vocational expert testified that plaintiff could not qualify for any type of substantial gainful work.

■ The Court has considered the entire record herein and, mindful of its limited review in these cases, concludes that the final decision of the Secretary was not based upon substantial evidence.

For the reasons stated above, the defendant's motion for summary judgment will be denied, and the Court will enter a judgment in Ms. Nanny's favor granting her disability benefits from May 16, 1975.

An appropriate order will issue.